UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MATTHEW DREW,

                             Plaintiff,                    Docket No.:

            -against-                                      **VERIFIED COMPLAINT**

                                                          **JURY TRIAL DEMANDED**
VILLAGE OF HEMPSTEAD & VILLAGE OF
HEMPSTEAD POLICE DEPARTMENT,

                             Defendants.
-------------------------------------------------------------X

       Plaintiff, MATTHEW DREW, by his attorneys, The Law Offices of Jason L. Abelove, as

and for his complaint against the Defendants VILLAGE OF HEMPSTEAD & VILLAGE OF

HEMPSTEAD POLICE DEPARTMENT (hereinafter collectively "Defendants" or singularly

"HPD") respectfully alleges as follows:

### STATEMENT PURSUANT TO LOCAL RULE 9

1.      For the purposes of complying with Local Rule 9, the Plaintiff states that he has no

corporate parent, subsidiary or affiliate and that there are no other interested parties.

### JURISDICTION AND VENUE

2.      This action is brought to remedy discrimination and for damages to redress the

deprivation of rights secured to the Plaintiff by Title VII of the Civil Rights Act of 1964,

as amended (42 U.S.C. §2000e et. seq.), the New York State Executive Law §290, et.

seq., and 42 U.S.C. §§ 1981 and 1983. Plaintiff requests this Court take supplemental

jurisdiction over the pendant state law claims.

3. Specifically, Defendants together with their agents, servants and employees acting both individually and in conspiracy with each other, acting beyond the scope of their job duties or functions, have intentionally, knowingly, purposefully violated Plaintiffs rights.

4. Defendants and their agents further promulgated discriminatory practices with respect to overtime, racial bias and other critical areas of employment and fostered an environment where Plaintiff and other white officers were denied overtime and otherwise discriminated against on the basis of their race.

5. These acts were done knowingly and purposefully and was the policy of Defendants.

6. The Defendants conduct business activities in the state of New York, County of Nassau, which is within the Eastern District of New York. Accordingly, venue lies in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391(a)(1) and (c).

7. Upon information and belief, the Defendant HPD is an agency of the Village of Hempstead and is duly organized and existing under the local and state law, including the Municipal Law and other public laws of the State of New York, and is located in the Village of Hempstead, County of Nassau and State of New York.

8. Upon information and belief, the Defendant is publicly owned by the Village of Hempstead.

9. Upon information and belief, that at all times hereinafter mentioned, the Defendants, their agents, servants and/or employees, supervised its employees.

10. The jurisdiction of the Court over this controversy is based upon 42 U.S.C. § 2000e-5(f) and 29 U.S.C. 2607.

11. It is also based upon Article 15 of the New York State Executive Law, and Title 8 of the Administrative Code of the City of New York.

12. Prior to filing this civil action, Plaintiff filed a charge of employment discrimination on the basis of gender and national origin and retaliation with the Equal Employment Opportunity Commission (EEOC) within three hundred (300) days of the last act of employment discrimination.

13. The EEOC issued a "Notice of Right to Sue" letter which was received by Plaintiff on September 13, 2019.

14. The Plaintiff filed this Complaint within ninety (90) days of receiving the "Notice of Right to Sue" letter from the EEOC.

## THE PARTIES

15. The Plaintiff, Matthew Drew ("Drew" or "Plaintiff") is a resident of the County of Nassau and State of New York.

16. The Plaintiff identifies as Caucasian/white.

17. The Defendant employed more than fifteen (15) employees for each working day in more than twenty (20) weeks during the current or preceding calendar year.

18. Therefore, the Defendant is an "employer" within the meaning of 29 U.S.C. 2611, Title VII § 701, 42 U.S.C. § 2000e(b), and New York State Executive Law § 292(5).

19. The Defendant is engaged in an "industry affecting commerce" within the meaning of Title VII §701(g)-(h), 42 U.S.C. §2000e(g)-(h) and 29 U.S.C. 2611.

20. The Plaintiff is a "person" within the meaning of Title VII §701(a), 42 U.S.C. §2000e(a).

## FACTUAL ALLEGATIONS

21. Plaintiff is a Caucasian/white male.

22. At all times herein relevant, Plaintiff held the rank of Police Officer with HPD.

23. Plaintiff has been employed by HPD as a Police Officer for over eights (8) years.


## A.    DISCRIMINATION IN OVERTIME

24. For the past several years, and continuing to present, the policy and practice of HPD in the distribution of overtime has been discriminatory against male, white officers.

25. Plaintiff, as well as others in the department have regularly complained about the policy of discrimination in the distribution of overtime, and these complaints have gone ignored.

26. Throughout Plaintiff's career and continuing through the filing of the Complaint, overtime has been distributed in an overtly discriminatory manner. Black and female officers are given a tremendous preference over white, male officers in the distribution of "manpower" overtime.

27. Within the Department, there are two types of overtime. The first type of overtime is non-discretionary to the department. It occurs when an arrest or other police action is needed and the officer is unable to leave at the end of his/her shift because the officer is actively engaged in police work.

28. The second type of overtime is defined by the Police Department as "manpower" overtime. This overtime is distributed when an entire shift must be covered by another police officer. The officer receiving this overtime is at the discretion of HPD.

29. HPD had a log book of available shifts, and officers who wanted "manpower" overtime were to put their name in the book for a fair rotation. Overtime is then supposed to be distributed evenly based upon which officers sign up for which dates.

30. This book was ignored by HPD in the assignment of manpower overtime.

31. Plaintiff consistently put his name in the book, and often, his name was the only name in the book on a given day, as it was understood in the Department that the book was not consulted in the distribution of overtime.

32. Despite frequently being the only name in the log book, Plaintiff almost never received manpower overtime.

33. Instead, the vast majority of overtime was given to black officers who do not even sign up to cover a given shift.

34. Upon information and belief, over 90% of all discretionary "manpower" overtime is given to black and/or female officers, with almost no overtime being given to white male officers who request overtime.

35. In 2018, Plaintiff received only 17 manpower overtime hours. In 2017, he received (at most) 30.33 hours and 36 hours (at most) in 2016.

36. By contrast Mandy Smith, a black officer received $73,000.00 in overtime for hundreds of hours in 2018 alone. In fact, less senior black officers are routinely given preference for overtime that more senior white officers.

37. Despite Plaintiff's regular complaints, the Defendants have taken no remedial action.

38. Following the filing of Plaintiff's EEOC charge, Plaintiff became aware of a troubling cover-up by HPD designed to hide the pattern and practice of racial preference in the distribution of overtime.

39.  Upon information and belief, while preparing its opposition to Plaintiff's EEOC charge, the Defendant's Police Chief asked an employee in charge of monitoring overtime hours to change the designation of overtime such that employees who had received non-discretionary overtime were changed in the system to indicate the overtime was "manpower" overtime.

40.  This change was effectuated so it would appear that white officers were not discriminated in the assignment of "manpower" overtime.


**B.    AUGUST 14, 2018 INCIDENT**

41.  The pattern and practice of discrimination within the HPD is so pervasive and rampant within HPD, that on August 6, 2018, Plaintiff was the victim of a severe bias incident.

42.  On that date, when Plaintiff went to his locker, he discovered that a member of the Police Department had taken a shirt and fashioned and labeled a "KKK" style hood over Plaintiff's locker.

43.  Plaintiff immediately reported this incident and demanded a full investigation.

44.  To date, HPD has not so much as taken a statement over the incident.

45.  By way of contrast, in a prior incident involving a disturbing racial incident against a black officer, the Defendants rightly called the FBI, the DA and IAB.

46.  No such action was taken to protect Plaintiff.

47.   In fact, the incident report prepared by HPD listed the matter as an "Investigation" rather than a crime.  This was also different from the prior incident involving a black officer.

48. No interviews were taken and Defendants have done nothing to investigate this matter or protect Plaintiff from further discrimination.

49. Consistent with the discriminatory practices against white officers, the matter was simply "swept under the rug".

50. In or around September 17, 2018, Plaintiff engaged an attorney to write a letter over the incident. Even after receiving the attorney's letter Defendants have conducted no investigation or taken any remedial measures.

51. Plaintiff is left unsafe in his own department.

52. Moreover, Plaintiff was threatened not to speak about the incident.

53. Days after the incident, Plaintiff was told that if we spoke with media or the public about the incident he would be disciplined and that discipline may include the termination of his employment.

54. By way of contrast, shortly after this incident, a black officer complained to the media about being promoted. No discipline has been given to Officer Wilson.

55. Plaintiff is being treated in a disparate fashion solely on account of his race.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### RACE DISCRIMINATION
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

56. Plaintiff repeats reiterates and re-alleges the preceding paragraphs and incorporates them by reference as if stated in full herein.

57. Plaintiff alleges that Defendants; under color of law personally interfered with and

-7-

deprived him of his constitutional rights, including the rights to petition his government for redress of his grievances and to be free from deprivation of life, liberty, and property without due process of law.

58. Plaintiff alleges that Defendants', acting individually and having been fully advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against him, or knowing such discrimination was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

59. Plaintiff alleges that Defendants' in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

60. Plaintiff alleges that defendants' acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at him and similarly situated individuals.

61. Plaintiff alleges that the discriminatory acts of defendants' caused him to suffer mental distress, loss of employment benefits, loss of promotion and to sustain unnecessary related legal expenses.

**COUNT II**
**MUNICIPAL VIOLATION**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

62. Plaintiff repeats reiterates and re-alleges the preceding paragraphs and incorporates them by reference as if stated in full herein.

63. Defendants acting under color of law, and through their employees, servants, agents and

designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiff of rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. §1983. These actions were condoned, adopted and fostered by policy makers including but not limited to Defendants.

64. Defendants, and each of them, condoned policy of unequal treatment and discrimination based on Plaintiff's race, color and in retaliation for having complained about discrimination.

65. As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer diminished employment, loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damages to his reputation.

**COUNT III**
**RACE DISCRIMINATION**
**IN VIOLATION OF**
**NEW YORK STATE EXECUTIVE LAW § 296**

66. Plaintiff repeats reiterates and re-alleges the preceding paragraphs and incorporates them by reference as if stated in full herein.

67. Plaintiff alleges that New York State Executive Law § 296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their race.

68. Plaintiff alleges that defendants discriminated against him because of his race.

69. Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of Defendants, he suffered the indignity of race discrimination and great humiliation.

70. Plaintiff alleges that Defendants' violations caused him to suffer mental distress, loss of employment benefits and to sustain unnecessary related legal expenses.

## COUNT IV
## RACE DISCRIMINATION
## 42 U.S.C. § 1981 (as amended)

71. Plaintiff repeats reiterates and re-alleges the preceding paragraphs and incorporates them by reference as if stated in full herein.

72. The above described discriminatory pattern and practice based on race, color, opposition to discrimination by Defendants violate 42 U.S.C. § 1981 as amended by the Civil Rights Restoration Act of 1991.

73. As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his character and reputation.

74. Because of Plaintiff's race and color Defendants have subjected Plaintiff to mistreatment, harassment and different treatment than other similarly situated Black officers, as detailed in the facts outlined herein.

75. Defendants violated public policy in discriminating against Plaintiff because of his race, color.

76. As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of $1,000,000.00 as well as punitive damages, costs and attorneys' fees.

## COUNT V
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000E *et seq.*

77.    Plaintiff repeats reiterates and re-alleges the preceding paragraphs and incorporates them by reference as if stated in full herein.

78.    The Plaintiff avers that by the above acts, the Defendant discriminated against the Plaintiff because of his race in the terms, conditions and privileges of her employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2.

79.    The Defendants' acts were with malice and reckless disregard for the Plaintiff's federally protected civil rights.

80.    The Plaintiff has suffered irreparable injury and monetary damages as a result of the Defendants' discriminatory practices unless and until this Court grants relief.

81.    As a result of the Defendants' discrimination on the basis of gender, the Plaintiff suffered economic losses, and mental anguish, pain and suffering, and other non pecuniary losses. Plaintiff requests back pay, front pay, and benefits, compensatory damages and punitive damages in an amount to be determined at trial, plus attorneys' fees, expert fees, costs and disbursements.

## JURY TRIAL

82.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands compensatory and punitive damages from Defendants in the amount to be determined at trial, plus available statutory remedies, both legal and equitable including attorneys' fees, interests and costs.

Dated: December 9, 2019
Garden City, New York

Respectfully submitted,

By: _____

Jason L. Abelove
LAW OFFICES OF JASON L. ABELOVE, P.C.
666 Old Country Road, Suite 303
Garden City, New York 11530
516-222-7000

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

MATTHEW DREW,

                  Plaintiff,

-against-

VILLAGE OF HEMPSTEAD & VILLAGE OF
HEMPSTEAD POLICE DEPARTMENT,

                  Defendants.

-------------------------------------------------------------X

Docket No.:

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff, MATTHEW DREW, by his attorneys, The Law Offices of Jason L. Abelove, as

and for his complaint against the Defendants VILLAGE OF HEMPSTEAD & VILLAGE OF

HEMPSTEAD POLICE DEPARTMENT (hereinafter collectively "Defendants" or singularly

"HPD") respectfully alleges as follows:

## STATEMENT PURSUANT TO LOCAL RULE 9

1.     For the purposes of complying with Local Rule 9, the Plaintiff states that he has no

    corporate parent, subsidiary or affiliate and that there are no other interested parties.

## JURISDICTION AND VENUE

2.     This action is brought to remedy discrimination and for damages to redress the

    deprivation of rights secured to the Plaintiff by Title VII of the Civil Rights Act of 1964,

    as amended (42 U.S.C. §2000e et. seq.), the New York State Executive Law §290, et.

    seq., and 42 U.S.C. §§ 1981 and 1983.  Plaintiff requests this Court take supplemental

    jurisdiction over the pendant state law claims.

3. Specifically, Defendants together with their agents, servants and employees acting both individually and in conspiracy with each other, acting beyond the scope of their job duties or functions, have intentionally, knowingly, purposefully violated Plaintiffs rights.

4. Defendants and their agents further promulgated discriminatory practices with respect to overtime, racial bias and other critical areas of employment and fostered an environment where Plaintiff and other white officers were denied overtime and otherwise discriminated against on the basis of their race.

5. These acts were done knowingly and purposefully and was the policy of Defendants.

6. The Defendants conduct business activities in the state of New York, County of Nassau, which is within the Eastern District of New York. Accordingly, venue lies in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391(a)(1) and (c).

7. Upon information and belief, the Defendant HPD is an agency of the Village of Hempstead and is duly organized and existing under the local and state law, including the Municipal Law and other public laws of the State of New York, and is located in the Village of Hempstead, County of Nassau and State of New York.

8. Upon information and belief, the Defendant is publicly owned by the Village of Hempstead.

9. Upon information and belief, that at all times hereinafter mentioned, the Defendants, their agents, servants and/or employees, supervised its employees.

10. The jurisdiction of the Court over this controversy is based upon 42 U.S.C. § 2000e-5(f) and 29 U.S.C. 2607.

11.   It is also based upon Article 15 of the New York State Executive Law, and Title 8 of the Administrative Code of the City of New York.

12.   Prior to filing this civil action, Plaintiff filed a charge of employment discrimination on the basis of gender and national origin and retaliation with the Equal Employment Opportunity Commission (EEOC) within three hundred (300) days of the last act of employment discrimination.

13.   The EEOC issued a "Notice of Right to Sue" letter which was received by Plaintiff on September 13, 2019.

14.   The Plaintiff filed this Complaint within ninety (90) days of receiving the "Notice of Right to Sue" letter from the EEOC.

**THE PARTIES**

15.   The Plaintiff, Matthew Drew ("Drew" or "Plaintiff") is a resident of the County of Nassau and State of New York.

16.   The Plaintiff identifies as Caucasian/white.

17.   The Defendant employed more than fifteen (15) employees for each working day in more than twenty (20) weeks during the current or preceding calendar year.

18.    Therefore, the Defendant is an "employer" within the meaning of 29 U.S.C. 2611, Title VII § 701, 42 U.S.C. § 2000e(b), and New York State Executive Law § 292(5).

19.   The Defendant is engaged in an "industry affecting commerce" within the meaning of Title VII §701(g)-(h), 42 U.S.C. §2000e(g)-(h) and 29 U.S.C. 2611.

20.   The Plaintiff is a "person" within the meaning of Title VII §701(a), 42 U.S.C. §2000e(a).

## FACTUAL ALLEGATIONS

21.    Plaintiff is a Caucasian/white male.

22.    At all times herein relevant, Plaintiff held the rank of Police Officer with HPD.

23.    Plaintiff has been employed by HPD as a Police Officer for over eight (8) years.

### A.    DISCRIMINATION IN OVERTIME

24.    For the past several years, and continuing to present, the policy and practice of HPD in the distribution of overtime has been discriminatory against male, white officers.

25.    Plaintiff, as well as others in the department have regularly complained about the policy of discrimination in the distribution of overtime, and these complaints have gone ignored.

26.    Throughout Plaintiff's career and continuing through the filing of the Complaint, overtime has been distributed in an overtly discriminatory manner.  Black and female officers are given a tremendous preference over white, male officers in the distribution of "manpower" overtime.

27.    Within the Department, there are two types of overtime.  The first type of overtime is non-discretionary to the department.  It occurs when an arrest or other police action is needed and the officer is unable to leave at the end of his/her shift because the officer is actively engaged in police work.

28.    The second type of overtime is defined by the Police Department as "manpower" overtime.  This overtime is distributed when an entire shift must be covered by another police officer.  The officer receiving this overtime is at the discretion of HPD.

29. HPD had a log book of available shifts, and officers who wanted "manpower" overtime were to put their name in the book for a fair rotation. Overtime is then supposed to be distributed evenly based upon which officers sign up for which dates.

30. This book was ignored by HPD in the assignment of manpower overtime.

31. Plaintiff consistently put his name in the book, and often, his name was the only name in the book on a given day, as it was understood in the Department that the book was not consulted in the distribution of overtime.

32. Despite frequently being the only name in the log book, Plaintiff almost never received manpower overtime.

33. Instead, the vast majority of overtime was given to black officers who do not even sign up to cover a given shift.

34. Upon information and belief, over 90% of all discretionary "manpower" overtime is given to black and/or female officers, with almost no overtime being given to white male officers who request overtime.

35. In 2018, Plaintiff received only 17 manpower overtime hours. In 2017, he received (at most) 30.33 hours and 36 hours (at most) in 2016.

36. By contrast Mandy Smith, a black officer received $73,000.00 in overtime for hundreds of hours in 2018 alone. In fact, less senior black officers are routinely given preference for overtime that more senior white officers.

37. Despite Plaintiff's regular complaints, the Defendants have taken no remedial action.

38. Following the filing of Plaintiff's EEOC charge, Plaintiff became aware of a troubling cover-up by HPD designed to hide the pattern and practice of racial preference in the distribution of overtime.

39. Upon information and belief, while preparing its opposition to Plaintiff's EEOC charge, the Defendant's Police Chief asked an employee in charge of monitoring overtime hours to change the designation of overtime such that employees who had received non-discretionary overtime were changed in the system to indicate the overtime was "manpower" overtime.

40. This change was effectuated so it would appear that white officers were not discriminated in the assignment of "manpower" overtime.

B.   AUGUST 14, 2018 INCIDENT

41. The pattern and practice of discrimination within the HPD is so pervasive and rampant within HPD, that on August 6, 2018, Plaintiff was the victim of a severe bias incident.

42. On that date, when Plaintiff went to his locker, he discovered that a member of the Police Department had taken a shirt and fashioned and labeled a "KKK" style hood over Plaintiff's locker.

43. Plaintiff immediately reported this incident and demanded a full investigation.

44. To date, HPD has not so much as taken a statement over the incident.

45. By way of contrast, in a prior incident involving a disturbing racial incident against a black officer, the Defendants rightly called the FBI, the DA and IAB.

46. No such action was taken to protect Plaintiff.

47.  In fact, the incident report prepared by HPD listed the matter as an "Investigation" rather than a crime.  This was also different from the prior incident involving a black officer.

48. No interviews were taken and Defendants have done nothing to investigate this matter or protect Plaintiff from further discrimination.

49. Consistent with the discriminatory practices against white officers, the matter was simply "swept under the rug".

50. In or around September 17, 2018, Plaintiff engaged an attorney to write a letter over the incident. Even after receiving the attorney's letter Defendants have conducted no investigation or taken any remedial measures.

51. Plaintiff is left unsafe in his own department.

52. Moreover, Plaintiff was threatened not to speak about the incident.

53. Days after the incident, Plaintiff was told that if we spoke with media or the public about the incident he would be disciplined and that discipline may include the termination of his employment.

54. By way of contrast, shortly after this incident, a black officer complained to the media about being promoted. No discipline has been given to Officer Wilson.

55. Plaintiff is being treated in a disparate fashion solely on account of his race.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### RACE DISCRIMINATION
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

56. Plaintiff repeats reiterates and re-alleges the preceding paragraphs and incorporates them by reference as if stated in full herein.

57. Plaintiff alleges that Defendants; under color of law personally interfered with and

-7-

deprived him of his constitutional rights, including the rights to petition his government for redress of his grievances and to be free from deprivation of life, liberty, and property without due process of law.

58.     Plaintiff alleges that Defendants', acting individually and having been fully advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against him, or knowing such discrimination was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

59.     Plaintiff alleges that Defendants' in acting to deprive him of his rights, acted intentionally, knowingly, willfully, and with gross disregard of his rights.

60.     Plaintiff alleges that defendants' acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at him and similarly situated individuals.

61.     Plaintiff alleges that the discriminatory acts of defendants' caused him to suffer mental distress, loss of employment benefits, loss of promotion and to sustain unnecessary related legal expenses.

### COUNT II
### MUNICIPAL VIOLATION
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

62.     Plaintiff repeats reiterates and re-alleges the preceding paragraphs and incorporates them by reference as if stated in full herein.

63.     Defendants acting under color of law, and through their employees, servants, agents and

designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiff of rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. §1983. These actions were condoned, adopted and fostered by policy makers including but not limited to Defendants.

64. Defendants, and each of them, condoned policy of unequal treatment and discrimination based on Plaintiff's race, color and in retaliation for having complained about discrimination.

65. As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer diminished employment, loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damages to his reputation.

## COUNT III
## RACE DISCRIMINATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

66. Plaintiff repeats reiterates and re-alleges the preceding paragraphs and incorporates them by reference as if stated in full herein.

67. Plaintiff alleges that New York State Executive Law § 296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their race.

68. Plaintiff alleges that defendants discriminated against him because of his race.

69. Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of Defendants, he suffered the indignity of race discrimination and great humiliation.

70. Plaintiff alleges that Defendants' violations caused him to suffer mental distress, loss of employment benefits and to sustain unnecessary related legal expenses.

**COUNT IV**
**RACE DISCRIMINATION**
**42 U.S.C. § 1981 (as amended)**

71. Plaintiff repeats reiterates and re-alleges the preceding paragraphs and incorporates them by reference as if stated in full herein.

72. The above described discriminatory pattern and practice based on race, color, opposition to discrimination by Defendants violate 42 U.S.C. § 1981 as amended by the Civil Rights Restoration Act of 1991.

73. As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his character and reputation.

74. Because of Plaintiff's race and color Defendants have subjected Plaintiff to mistreatment, harassment and different treatment than other similarly situated Black officers, as detailed in the facts outlined herein.

75. Defendants violated public policy in discriminating against Plaintiff because of his race, color.

76. As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of $1,000,000.00 as well as punitive damages, costs and attorneys' fees.

## COUNT V
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000E *et seq.*

77.    Plaintiff repeats reiterates and re-alleges the preceding paragraphs and incorporates them

by reference as if stated in full herein.

78.    The Plaintiff avers that by the above acts, the Defendant discriminated against the

Plaintiff because of his race in the terms, conditions and privileges of her employment in

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2.

79.    The Defendants' acts were with malice and reckless disregard for the Plaintiff's federally

protected civil rights.

80.    The Plaintiff has suffered irreparable injury and monetary damages as a result of the

Defendants' discriminatory practices unless and until this Court grants relief.

81.    As a result of the Defendants' discrimination on the basis of gender, the Plaintiff suffered

economic losses, and mental anguish, pain and suffering, and other non pecuniary losses.

Plaintiff requests back pay, front pay, and benefits, compensatory damages and punitive

damages in an amount to be determined at trial, plus attorneys' fees, expert fees, costs and

disbursements.

### JURY TRIAL

82.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

### PRAYER FOR RELIEF

Wherefore, Plaintiff demands compensatory and punitive damages from Defendants in

the amount to be determined at trial, plus available statutory remedies, both legal and equitable

including attorneys' fees, interests and costs.

Dated: December 9, 2019
       Garden City, New York

                         Respectfully submitted,

                         By: _____
                              Jason L. Abelove
                              LAW OFFICES OF JASON L. ABELOVE, P.C.
                              666 Old Country Road, Suite 303
                              Garden City, New York 11530
                              516-222-7000