UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   For Online Publication Only
MATTHEW DREW,

                                    Plaintiff,

    -against-

VILLAGE OF HEMPSTEAD,
VILLAGE OF HEMPSTEAD
POLICE DEPARTMENT,

                                   Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**
19-CV-6907 (JMA) (SIL)

**APPEARANCES:**

Jason L. Abelove
666 Old Country Road, Suite 303
Garden City, NY 11530
   *Attorney for Plaintiff*

Richard S. Finkel
1399 Franklin Avenue, Suite 200
Garden City, NY 11530
   *Attorney for Defendants*

**AZRACK, United States District Judge:**

      Defendants Village of Hempstead and Village of Hempstead Police Department ("Defendants") move to dismiss the complaint of plaintiff Matthew Drew ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 18.) For the reasons set forth below, the Court **GRANTS** Defendants' motion in its entirety and dismisses this case.

### I. BACKGROUND[1]

      Plaintiff is a self-identified "Caucasian/white male" who worked as a police officer for the Village of Hempstead Police Department (the "Department" or the "HPD") for over eight years

---

[1] The Court takes the factual allegations in the complaint as true and draws all reasonable inferences in favor of Plaintiff. See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

before pursuing the instant litigation. (Compl. ¶¶ 21-23.) He claims that the Department discriminated against him in two ways.

First, Plaintiff challenges the Department's allocation of discretionary overtime hours to officers. The complaint describes how Black and female officers are purportedly assigned to 90% of available discretionary overtime hours, even when they do not sign up for overtime. White and male officers, like Plaintiff, are allegedly ignored when they affirmatively request the discretionary overtime shifts. (Id. ¶ 34.)

Second, Plaintiff claims that the Department failed to respond adequately to an August 2018 incident in which a shirt was placed in his locker that had been fashioned into a KKK-style hood with the phrase "KKK Violate Civil Rights" written in black ink. (Id. ¶ 42; ECF No. 20-6 at 1.)[2] He argues that in contrast to this incident, which he says was "swept under the rug," the Department immediately contacted the FBI, DA, and IAB to investigate a comparable situation in which a Black officer was targeted. (Compl. ¶ 49.) The complaint provides no detail about this situation other than describing it as a "disturbing racial incident against a black officer." (Id. ¶ 45.) Following the hood incident, Plaintiff alleges that he was warned not to speak about it. He takes issue with this warning because in a separate, seemingly unrelated incident, another officer, who is Black, "complained to the media about being promoted" but was not disciplined. (Id. ¶ 54.)

On November 2, 2018, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). After receiving a "Notice of Right to Sue" on September 13, 2019, Plaintiff initiated the instant litigation on December 9, 2019. (Id. ¶ 13.) He brings five claims against Defendants, including: (1) race discrimination in violation of 42 U.S.C. § 1983; (2) a Monell claim alleging municipal liability for violations of 42 U.S.C. § 1983; (3) race

---

[2] On the same page of the complaint, the date of the incident is listed as both August 6 and August 14, 2018. (ECF No. 1 at 6.)

2

discrimination in violation of New York State Executive Law § 296, i.e., the New York Human Rights Law (the "NYSHRL"); (4) race discrimination in violation of 42 U.S.C. § 1981; and (5) race discrimination in violation of Title VII.

## II.  LEGAL STANDARD

Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 19.) For the reasons explained below, the Court grants the motion in its entirety.

### A.  Standard of Review

#### 1.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.À.R.L., 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

#### 2.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

3

for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 556. When reviewing a motion to dismiss, the Court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

### B. Discussion

The Court addresses Defendants' arguments in response to each of Plaintiff's claims based on the order in which Plaintiff pleads his claims in the complaint. Because the Court concludes that Plaintiff has not alleged any plausible claims concerning overtime or the August 2018 incident involving the hood, the Court does not address Defendants' arguments regarding timeliness and the substance of Plaintiff's Monell claims.

#### 1. Discriminatory Denial of Overtime

##### a. Standard

"To defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015). "At the pleading stage, the plaintiff need only 'sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." Cardwell v. Davis Polk & Wardwell LLP, 19-CV-10256, 2020 WL 6274826, at *17 (S.D.N.Y. Oct. 24, 2020) (quoting Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015)) (emphasis in original). In order to do so, the "plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably." Norville v. Staten Island Univ. Hosp.,

196 F.3d 89, 95 (2d Cir. 1999). "When considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment," the Second Circuit has explained, "the plaintiff must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (internal marks and citation omitted). In particular, "[a]t the pleading stage, allegations that the plaintiff and comparators worked in the same group and were accountable to the same supervisors, but were subjected to disparate treatment may be sufficient to raise an inference of discrimination." Pothen v. Stony Brook Univ., 211 F. Supp. 3d 486, 495 (E.D.N.Y. 2016). A plaintiff should provide sufficient "details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were . . ., how their conduct compared to plaintiffs' or how they were treated differently by defendants." Haggood v. Rubin & Rothman, LLC, No. 14-CV-34, 2014 WL 6473527, at *12 (E.D.N.Y. Nov. 17, 2014). The same standards apply to Plaintiff's claims under Title VII, Section 1981, Section 1983, and the NYSHRL, which have identical burdens of proof and production for employment discrimination claims. See Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 209–10 (E.D.N.Y. 2014).

### b. The Complaint's Allegations Concerning Overtime

In claiming that he was discriminated against in the assignment of overtime, Plaintiff alleges that:

> 27. Within the Department, there are two types of overtime. The first type of overtime is non-discretionary to the department. It occurs when an arrest or other police action is needed and the officer is unable to leave at the end of his/her shift because the officer is actively engaged in police work.
>
> 28. The second type of overtime is defined by the Police Department as 'manpower' overtime. This overtime is distributed when an entire shift must be covered by another police officer. The officer receiving this overtime is at the discretion of HPD.

5

29. HPD had a log book of available shifts, and officers who wanted 'manpower' overtime were to put their name in the book for a fair rotation. Overtime is then supposed to be distributed evenly based upon which officers sign up for which dates.

30. This book was ignored by HPD in the assignment of manpower overtime.

31. Plaintiff consistently put his name in the book, and often, his name was the only name in the book on a given day, as it was understood in the Department that the book was not consulted in the distribution of overtime.

32. Despite frequently being the only name in the log book. Plaintiff almost never received manpower overtime.

33. Instead, the vast majority of overtime was given to black officers who do not even sign up to cover a given shift.

34. Upon information and belief, over 90% of all discretionary 'manpower' overtime is given to black and/or female officers, with almost no overtime being given to white male officers who request overtime.

35. In 2018, Plaintiff received only 17 manpower overtime hours. In 2017, he received (at most) 30.33 hours and 36 hours (at most) in 2016.

36. By contrast Mandy Smith, a black officer received $73,000.00 in overtime for hundreds of hours in 2018 alone. In fact, less senior black officers are routinely given preference for overtime tha[n] more senior white officers.

37. Despite Plaintiff's regular complaints, the Defendants have taken no remedial action.

38. Following the filing of Plaintiff's EEOC charge. Plaintiff became aware of a troubling cover-up by HPD designed to hide the pattern and practice of racial preference in the distribution of overtime.

39. Upon information and belief, while preparing its opposition to Plaintiff's EEOC charge, the Defendant's Police Chief asked an employee in charge of monitoring overtime hours to change the designation of overtime such that employees who had received nondiscretionary overtime were changed in the system to indicate the overtime was 'manpower' overtime.

40. This change was effectuated so it would appear that white officers were not discriminated in the assignment of "manpower" overtime.

6

### c. Analysis

These allegations are insufficient to plausibly allege that the denial of Plaintiff's requests to work "manpower" shifts was discriminatory.

As an initial matter, central to Plaintiff's overtime claims are his allegations about the logbook. While Plaintiff alleges that officers "were to put their name in the book for <u>a fair rotation</u>" and that "[o]vertime is then <u>supposed to be distributed evenly based upon which officers sign up for which dates</u>," Plaintiff provides no further factual allegations in support of these conclusory points. (Compl. ¶ 29 (emphasis added).) Plaintiff's opposition brief asserts that it is HPD policy to distribute "discretionary overtime . . .evenly," (ECF No. 22 at 12), but Plaintiff's complaint never squarely makes such an assertion and provides no factual allegations indicating that any document or HPD official ever characterized HPD's policy as such. Nor does Plaintiff allege that these manpower hours had ever previously "been distributed evenly based upon which officers sign up for which dates." (Compl. ¶ 29.)

None of Plaintiff's other allegations are sufficient to plausibly allege discrimination. Plaintiff's complaint alleges that: (1) "the vast majority of overtime was given to black officers who do not even sign up [in the log book] to cover a given shift"; (2) "Black and female officers are given a tremendous preference over white, male officers in the distribution of 'manpower' overtime"; and (3) "less senior black officers are routinely given preference for overtime tha[n] more senior white officers." (<u>Id.</u> ¶¶ 26, 33, 36.) In support of these conclusory allegations, Plaintiff cites to a single Black officer named Mandy Smith. As explained below, Plaintiff's allegations concerning Smith are insufficient to plausibly allege discrimination. And, Plaintiff's broader allegations concerning unidentified Black and female officers are, on their own, insufficient to plausibly allege discrimination.

7

Plaintiff's complaint also contains two allegations based on "information and belief." "Alleging something 'upon information and belief' does not suffice to allege a fact under Iqbal and Twombly unless plaintiff can point to some facts that make the allegations more than pure speculation." Singa v. Corizon Health, Inc., No. 17-CV-4482, 2018 WL 324884, at *4 (E.D.N.Y. Jan. 8, 2018). Here, Plaintiff's complaint alleges, "upon information and belief, [that] over 90% of all discretionary 'manpower' overtime is given to black and/or female officers, with almost no overtime being given to white male officers who request overtime." (Compl. ¶ 34.) This allegation is insufficient to state a plausible claim of discrimination. Again, the only factual allegation that Plaintiff avers to support this allegation based on "information and belief" is Plaintiff's conclusory allegation about one officer, Mandy Smith, and—as discussed below—that allegation is insufficient to state a plausible claim. See Haggood, 2014 WL 6473527, at *12. ("Since all of plaintiffs' allegations, made 'upon information and belief,' pertaining to the treatment non-African American employees received at R&R are entirely conclusory, they are not entitled to the assumption of truth and are insufficient to withstand a motion to dismiss."). The Court also notes that Plaintiff's complaint does not provide even an approximate breakdown of the demographics of the police by race and gender, which further undercuts the probative force of Plaintiff's allegation that over 90% of the "manpower" overtime is given to Black and/or female officers.

Plaintiff also alleges, on information and belief, that the Police Chief asked an employee to change the designation of certain overtime in the system so that it would appear that white officers were not discriminated against. Plaintiff's complaint, however, includes no factual allegations to support this allegation based on information and belief. Plaintiff does not squarely allege that any such changes were ever made to overtime in this system and does not point to a

8

single individual whose overtime records were actually changed.[3] Given the complete absence of any supporting allegations, Plaintiff's attempt to plead this allegation on "information and belief" is nothing more than speculation and clearly deficient to survive a motion to dismiss.[4]

The Court now turns to Plaintiff's allegations concerning Mandy Smith. Plaintiff alleges that while he received only 17 manpower hours in 2018, "at most" 30.33 "hours" in 2017, and "at most" 36 "hours" in 2016, "Mandy Smith, a black officer received $73,000.00 in overtime for hundreds of hours in 2018 alone." (Compl. ¶¶ 35-36 (emphasis added).) The complaint, however, says nothing about the amount of "manpower" overtime hours Smith received. Thus, on its face, the complaint's allegation about Smith fails to plausibly allege discrimination. Additionally, even assuming, arguendo, that Smith did receive more manpower hours than Plaintiff, Plaintiff has not provided sufficient information about Smith's position and seniority to plausibly allege that Smith is similarly situated to Plaintiff. Having failed to allege that he and Smith had, inter alia, the same job responsibilities, Plaintiff has failed "to render plausible the inference" that his race, "rather than any number of other considerations," led to the purportedly discriminatory allocation of overtime to Smith instead of Plaintiff. Mesias v. Cravath, Swaine & Moore LLP, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015) (finding allegations insufficient to state a plausible claim where the plaintiff failed to allege that he and the alleged comparator "worked in the same department, had the same job responsibilities, or had the same supervisors").

---

[3] Plaintiff's complaint also alleges that "[t]his change was effectuated so it would appear that white officers were not discriminated in the assignment of 'manpower' overtime." (Compl. ¶ 40.) To the extent this allegation is asserting that these changes were actually made, it is too conclusory to raise a plausible claim. Again, Plaintiff's complaint does not identify a single employee whose overtime hours were changed in the system.

[4] Both of Plaintiff's attempts to plead allegations based on information and belief are also problematic because Plaintiff appears to have had access to the overtime records for his fellow employees when he drafted the complaint and, at the very least, when he filed his opposition to the motion to dismiss. Defendants' motion to dismiss represents that these records "were attached to the Position Statement filed by the Village with the EEOC and were also provided to Plaintiff's counsel at the Court's direction in early March 2020, months prior to the submission of this motion." (ECF No. 19 at 24 n.6.) Plaintiff does not dispute that representation.

Finally, the Court notes that Defendants have provided the Court with overtime records that they ask the Court to consider. Plaintiff does not rely on these records and his brief is silent concerning them.[5] These records indicate that Smith received substantially more "manpower" overtime hours than Plaintiff in 2018. Plaintiff appears to have received 47.33 manpower hours in 2018 whereas Smith received 211.14 hours that year. In 2016, 2017, and 2018, Plaintiff received, respectively, 778.26, 559.76, and 553.57 in total overtime hours. For those same years, Smith received, respectively, 687.37, 648.38, and 239.96 in total overtime hours.[6]

However, even if the Court were to consider these records and the disparity reflected therein concerning manpower overtime in 2018, Plaintiff has still not pled a plausible discrimination claim because he has not plausibly alleged that Smith is similarly situated to him. Based on the overtime records, the fact that Plaintiff apparently earned substantially more non-discretionary overtime than Smith reinforces the Court's earlier conclusion that Plaintiff has failed to allege that he and Smith are similarly situated. The records show, for example, that almost all the overtime hours Smith received in 2018 were manpower hours, which strongly suggests that—unlike Plaintiff—Smith ordinarily does not earn other forms of overtime and, thus, is not similarly situated to Plaintiff. (ECF No. 20-3.) Under these circumstances, the fact that Smith received more discretionary "manpower" hours than Plaintiff does not plausibly suggest discrimination. Again, Plaintiff has failed "to render plausible the inference" that his race, "rather than any number

---

[5] As explained earlier, if the Court did not consider these records and relied solely on Plaintiff's allegations in the complaint, Plaintiff's claims would fail because Plaintiff's complaint never specifies the type of overtime that Smith earned.

[6] The records show that Smith's overtime rate in 2018 was 104.536–higher than Plaintiff's overtime rate of 70.453. This disparity likely indicates that Smith has more seniority than Plaintiff, who, according to the complaint, has only been on the force for eight years. (Compl. ¶ 23.)

10

of other considerations," led to the purportedly discriminatory allocation of overtime to Smith instead of Plaintiff. Mesias, 106 F. Supp. 3d at 437.

### 2. Hood Incident Allegations

With respect to the incident involving the hood, the complaint is unclear as to Plaintiff's precise theory as to how Defendants are liable under Title VII. Plaintiff's brief in opposition references both discrimination and retaliation, but the complaint does not allege retaliation and it is difficult to decipher the arguments in Plaintiff's brief concerning this incident. In his brief, Plaintiff first argues that the Department failed to investigate. (ECF No. 21 at 7 ("HPD, despite due demand, has done no internal investigation or taken a single statement. No remedial measures have been taken. By way of contrast, when a similar bias incident was targeted against a black officer, thorough and detailed action was taken, including the calling of the FBI, the DA, and IAB.").) Plaintiff later argues that "Defendant has tried to characterize Plaintiff's claim with respect to the KKK hood as a failure to investigate. The claim alleges that this incident was part of the discrimination within the Department and no remedial measures were taken." (Id. at 14.) As explained below, Plaintiff's attempt to bring discrimination and retaliation claims based on this incident fail.

A failure to investigate does not constitute an adverse employment action for purposes of Plaintiff's discrimination claims. See, e.g., Roache v. Long Island R.R., No. 18-CV-6443, 2020 WL 5594640, at *9 (E.D.N.Y. Sept. 17, 2020) ("LIRR argues, correctly, that negative comments, disciplinary citations, and the failure to investigate complaints do not constitute adverse employment actions."); Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 690 (S.D.N.Y. 2011) ("Defendants' failure to follow up on Price's claims of discrimination is not an adverse employment action."); Hayes v. Kerik, 414 F.Supp.2d 193, 203 (E.D.N.Y. 2006) ("Defendants are

11

correct in their contention that plaintiff's allegations . . . that the DOC failed to properly investigate her 1995 complaint of discrimination[ ] do[es] not constitute [an] adverse employment action []."). Accordingly, Plaintiff does not have a viable discrimination claim under either Title VII or Section 1983 based on the purported failure to investigate the hood incident. Relatedly, Defendants' failure to take unspecified remedial measures also fails to plausibly allege an adverse employment action.

Plaintiff has also failed to plausibly allege that the Village's purported failure to investigate the August 14, 2018 incident was discriminatory. Plaintiff claims that this incident was comparable to a "disturbing racial incident against a black officer" where the HPD contacted "the FBI, the DA, and IAB." (Compl. ¶ 45.) Plaintiff, however, provides no details about that incident. As such, the HPD's treatment of this other incident does not plausibly suggest discrimination.

Plaintiff also has no viable retaliation claims based on the hood incident. As an initial matter, Plaintiff's complaint never squarely alleges a retaliation claim—based on Plaintiff's complaints concerning discriminatory allocation of overtime—under either Title VII, Section 1981, or Section 1983. For that reason alone, Plaintiff's retaliation claims fail. In any event, Plaintiff has not plausibly alleged a retaliation claim.

As the Second Circuit has explained, "for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." Vega, 801 F.3d at 90.

Plaintiff has not plausibly alleged that he suffered a materially adverse action. A materially adverse action "means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."

12

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). Plaintiff criticizes the HPD's investigation into this incident as inadequate and faults Defendants for failing to take unspecified remedial measures to protect him from discrimination. According to Plaintiff, HPD did not even "take[] a single statement" over the incident, whereas for the "similar bias incident [that] was targeted against a black officer," HPD treated the incident as a crime and called the FBI, the DA, and IAB. (ECF No. 22 at 7.) Plaintiff's reliance on this other incident as an apparent benchmark for what constitutes a proper investigation is not helpful because, as noted above, Plaintiff provides no details about this prior incident. Moreover, Defendants have provided the Court with a copy of the incident report referenced in the complaint, which indicates that a detective responded to the scene, as did an officer from the Nassau County Internal Affairs Bureau. (ECF No. 20-6.)[7] Plaintiff has not plausibly alleged that Defendants' purportedly inadequate investigation would dissuade a reasonable worker from making or supporting a charge of discrimination.[8]

Plaintiff has also not plausibly alleged causation, an essential element of a retaliation claim. Vega, 801 F.3d at 90. The complaint makes no plausible connection between Plaintiff's purported complaints about overtime allocation and the alleged lack of response he received after reporting the hood incident. Plaintiff's allegations regarding his complaints as to overtime allocation are completely vague. The complaint simply notes that "Plaintiff and others in the department have

---

[7] As with the overtime records, Plaintiff has not argued that this document should not be considered by the Court. The Court can consider "documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about . . . and relied upon, in bringing the suit." Tortomas v. Pall Corp., No. 18-CV-5098, 2020 WL 2933669, at *2 (E.D.N.Y. May 31, 2020). Here, the HPD's response to the incident is explicitly described in the complaint and incorporated by reference. Plaintiff knew about it in bringing suit.

[8] Notably, the perpetrator of the hood incident was anonymous. Officers were sent to the scene to investigate. While Plaintiff faults Defendants for apparently not taking a formal "statement" from him concerning the incident, Plaintiff— who is himself a police officer—has not identified any specific investigative steps or other remedial measures that should have been taken. Nor does Plaintiff identify any particular individual who he believes the police should have investigated further in order to discover the unknown perpetrator of this incident.

13

regularly complained about the policy of discrimination in the distribution of overtime" and such complaints "have gone ignored." (Compl. ¶ 25.) Plaintiff provides no details about the substance of these complaints. Nor does he identify the recipient of those complaints. Most importantly, Plaintiff never identifies <u>when</u> he made these complaints. Although temporal proximity between a complaint and an adverse action is one way to plausibly allege causation, <u>Cifra v. G.E. Co.</u>, 252 F.3d 205, 217 (2d Cir. 2001), Plaintiff cannot rely on temporal proximity here because he never identifies when he complained about overtime. <u>See</u>, e,g., <u>Ahmad v. New York City Health & Hosps., Corp.</u>, No. 20-CV-675, 2021 WL 1225875, at *27 (S.D.N.Y. Mar. 31, 2021) ("the disciplinary charges against Ahmad were brought approximately 2.5 months after the last of his protected activities: his EEOC charge. Although temporal proximity alone will not be enough to support [Ahmad's] claim on summary judgment, . . . it is sufficient at the pleading stage." (internal marks omitted)). Plaintiff has therefore failed to allege a plausible retaliation claim.

### III.  CONCLUSION

For the reasons set forth above, Defendants' motion is **GRANTED** in its entirety. (ECF No. 18.) In addition, because the Court finds Plaintiff's underlying state law claims implausible, the Court **DENIES** as moot Plaintiff's cross motion for leave to file a late notice of claim. (ECF No. 21.) The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated:  March 31, 2021
       Central Islip, New York

                                     /s/ (JMA)
                                   JOAN M. AZRACK
                                   UNITED STATES DISTRICT JUDGE